1   JACK RUSSO (State Bar No. 96068)
    MICHAEL RISCH (State Bar No. 197600)
2   RUSSO & HALE LLP
    401 Florence Street
3   Palo Alto, CA 94301
    Telephone: (650) 327-9800
4   Facsimile: (650) 327-3737
    Email:  jrusso@computerlaw.com
5   Email:  mrisch@computerlaw.com

6   Attorneys for Plaintiff
    YIELD DYNAMICS, INC.

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                           SAN FRANCISCO DIVISION

11

12  YIELD DYNAMICS, INC., a California        Case No. 06-C-00331 VRW
    corporation,
13                                            **PLAINTIFF YIELD DYNAMICS, INC.'S**
                        Plaintiff,            **NOTICE OF MOTION AND MOTION FOR**
14                                            **PARTIAL SUMMARY JUDGMENT**

                        vs.                   Date:      August 3, 2006
15                                            Time:      2:00 P.M.
    TEA SYSTEMS CORPORATION, a                Crtrm.:    Courtroom 6, 17th Floor
16  Pennsylvania corporation; TERRENCE E.     Judge:     Hon. Vaughn R. Walker
    ZAVECZ, an individual; DONNA ZAVECZ,
17  an individual,

18                      Defendants.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................ 1
INTRODUCTION .................................................................................................. 1
STATEMENT OF FACTS ...................................................................................... 1
STANDARD FOR GRANTING SUMMARY JUDGMENT ..................................... 4
ARGUMENT ......................................................................................................... 5
    I.      THE SOURCE CODE IS COPYRIGHTED AND COPYRIGHTABLE.. 5
    II.     DEFENDANTS ARE COLLATERALLY ESTOPPED
          FROM DENYING INFRINGEMENT. ...................................................... 6
    III.    THERE IS NO FACTUAL DISPUTE THAT
          DEFENDANTS COPIED YDI'S SOURCE CODE................................ 8
                A.     YDI's Expert's Analysis Proves Copying by Defendants.. 8
                B.     Defendants' Expert Admitted Copying Was the
                      Most Likely Explanation for YDI's Expert's Findings.... 10
                C.     The Facts Presented Are More Than Sufficient to Grant
                      Summary Judgment...................................................... 13
    IV.    THERE IS NO DISPUTE THAT THE COPYING WAS WILLFUL..... 15
    V.     DEFENDANTS' COPYING IS NOT FAIR USE. ................................. 15
                A.     This Was a Commercial Use........................................... 15
                B.     The Nature of the Copyrighted Work. ........................... 15
                 C.     The Amount and Substantiality of the Copied Work....... 16
                 D.     The Effect of Use on the Potential Market. .................... 16
    VI.    DEFENDANTS ARE ESTOPPED FROM
          CLAIMING THE BENEFITS OF 17 U.S.C. § 412............................... 17
CONCLUSION .................................................................................................. 18

1

# TABLE OF AUTHORITIES

2

3

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................. 5

Apple Computer v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994) ..................... 5

Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1249 (3d Cir.
    1983) ...................................................................................................................... 5

Broderbund Software, Inc. v. Unison World, Inc., 648 F. Supp. 1127, 1135 (N.D.
    Cal. 1986) ............................................................................................................. 13

Cadence Design Sys. v. Avant! Corp., 125 F.3d 824, 825 n.2 (9th Cir. 1997) ............. 1

Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) ........................................ 5

Engineering Dynamics, Inc. v. Structural Software, Inc., 46 F.3d 408, 410 (5th Cir.
    1995) .................................................................................................................... 14

Fafel v. Dipaola, 399 F.3d 403, 414-415 (1st Cir. 2005) ............................................ 7

Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1091 n.7 (9th Cir. 2003) ...... 17

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (U.S. 1991) ................. 5

Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1383 (9th Cir. 1978) ..................... 7

Harper & Row, Publishers, Inc. v Nation Enterprises, 471 U.S. 539, 562 (1985) ......... 15, 16

Hayden v. Chalfant Press, Inc., 281 F.2d 543, 548 (9th Cir. 1960) ............................ 14

Humetrix, Inc. v. Gemplus S.C.A., 268 F.3d 910, 918 (9th Cir. 2001) ....................... 17

In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) .................................................. 7

John Alden Homes v. Kangas, 142 F. Supp. 2d 1338, 1344 (D. Fla. 2001) ................. 14

Konor Enterprises, Inc. v. Eagle Publications, Inc., 878 F.2d 138, 141 (4th Cir.
    1989) .................................................................................................................... 15

Koontz v. Jaffarian, 617 F. Supp. 1108, 1114-15 (E.D. Va. 1985) ............................ 14

Mallory v. Eyrich, 922 F.2d 1273, 1279 (6th Cir. 1991) ........................................... 6, 7

Markham v. A. E. Borden Co., 206 F.2d 199, 202 (1st Cir. 1953) .............................. 14

Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006) .......... 7

Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir 1936) .................. 16

Twentieth Century-Fox Film Corp. v. Stonesifer, 140 F.2d 579, 582 (9th Cir. 1944) .. 14

U.S. v. Diebold, 369 U.S. 654, 655 (1964) ............................................................... 5

Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354, 360 (9th Cir. 1947) ...... 14

Webb v. James, 147 F.3d 617, 621-621 (7th Cir. 1998) ............................................. 6, 7

Wihtol v. Wells, 231 F.2d 550, 553 (7th Cir. 1956) .................................................. 14

26

27

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com^sm

**Motion for Partial Summary Judgment**

iii

Case No. 06-C-00331 VRW

1

**STATUTES**

2    17 U.S.C. § 106...............................................................................................................13

3    17 U.S.C. § 412...............................................................................................................17

     17 U.S.C. § 504(c) (2006)...............................................................................................17

4

**OTHER AUTHORITIES**

5    H. REP. NO. 94-1476 (1976)..............................................................................................17

6

**RULES**

7    F. R. CIV. P. 56..........................................................................................................4, 5

8    F. R. CIV. P. 68..........................................................................................................6, 7

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Motion for Partial Summary Judgment**

Case No. 06-C-00331 VRW

1

## **NOTICE OF MOTION**

2

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

3            NOTICE IS HEREBY GIVEN THAT on August 3, 2006, at 2:00PM, or as soon thereafter

4  as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Ave., San

5  Francisco, CA 94102, Plaintiff Yield Dynamics, Inc. ("YDI") will and hereby does move the Court

6  for summary judgment on the ground that there is no genuine issue as to any material fact and that

7  the moving party is entitled to judgment as a matter of law for the reason that undisputed facts

8  demonstrate that Defendants have infringed Plaintiff's copyrights.

9            This motion is based upon this Notice of Motion and Motion for Partial Summary

10  Judgment, and the points and authorities therein; the declarations of Peter Smith and Michael

11  Risch; all pleadings and papers on file in this action; and upon such other matters as may be

12  presented to the Court at the time of the hearing.

13

14

## **INTRODUCTION**

15            This is a simple case with claims for copyright infringement regarding computer source

16  code.  As YDI will show, Defendants copied YDI's source code and used it in their own products.

17  Defendants' copying is a fact that YDI has established beyond any reasonable dispute, and for that

18  reason, this Court should grant summary judgment for YDI.

19

20

## **STATEMENT OF FACTS**

21  **Background**

22            This case centers around copied software source code.  "Computer programs are written in

23  specialized languages (e.g., PASCAL, COBOL) called source code.  The source code, which

24  humans can read, is then translated into a form that computers can 'read.'  The computer readable

25  form, which operates on a binary system, is called object code."  Cadence Design Sys. v. Avant!

26  Corp., 125 F.3d 824, 825 n.2 (9th Cir. 1997).

27            Semiconductor products, such as microprocessors and RAM memory, result from complex

28  manufacturing processes.  Yield management software and methodologies can be used to increase

1    the efficiency of such processes, thus producing a greater yield of semiconductor products from a

2    given manufacturing process or set of processes.  By increasing the efficiency of these processes,

3    yield management software also allows semiconductor manufacturers to decrease time-to-market

4    on various integrated circuit devices.

5

6    **Plaintiff**

7        Yield Dynamics, Inc. ("YDI") is a privately-held company based in Sunnyvale, California

8    that develops and markets proprietary yield management and automated process control software

9    for the semiconductor industry.  YDI's Genesis software product line provides a suite of highly

10   sophisticated yield management tools, which integrate with the manifold data sources collected

11   during the semiconductor manufacturing process and provide algorithms and software tools to

12   analyze this data in support of a yield management methodology.  YDI's enTune software product

13   line offers a collection of advanced process control tools, which collect data in real-time during the

14   semiconductor manufacturing process and provide automatic corrections to the process.  (See

15   Reporter's Transcript from the Trade Secrets Litigation ("RT") at Risch Decl. Ex. D, pp. 429:27-

16   430:15.)

17

18   **Defendants**

19       Defendant TEA Systems Corporation ("TEA") was and is owned by Defendant Terrence E.

20   Zavecz ("Zavecz") and his wife.  TEA's products were designed to look at steppers and scanners

21   (expensive photolithography machines) in a semiconductor fabrication facility ("fab") and retrieve

22   data on alignment and registration imaging about the integrated circuit on the silicon wafers being

23   processed.  Defendant Sub-Lambda Systems, Inc. is another company of Zavecz's which also

24   designs and markets software used in conjunction with photolithography machines during the

25   semiconductor manufacturing process.  SLS is owned by Zavecz and other shareholders, but

26   Zavecz is its president as well as its primary and controlling employee.  (See Zavecz deposition

27   transcript at Risch Decl. Ex. B, pp. 7:11-24, 307:2-23, 311:23-313:21.  See also Risch Decl. Ex. E,

28   p. 1.)  SLS made an offer of judgment in this case, which YDI accepted.  (Docket Nos. 12, 13.)

**Asset Purchase**

In early 1999, YDI became aware of TEA, which was trying to sell self-made programs named OASnt and FPAex.  On May 21, 1999, YDI and TEA/Zavecz signed an Agreement of Purchase and Sale of Assets (the "Asset Agreement") whereby YDI purchased the intellectual property of TEA, specifically including MAPA, OASnt, and FPAex and all source code thereto.[1] On May 24, 1999, Zavecz signed the Asset Agreement and accepted YDI's offer of employment as its Vice President of Lithography Applications.  (Risch Decl. Ex. F.)  Soon after signing the Asset Agreement, Zavecz delivered several CD-ROMs to YDI which included source code of MAPA, OASnt, and FPAex (the "YDI Code").  The YDI Code was written in the RPL programming language.  (RT at Risch Decl. Ex. D, p. 521:13-521:26.)

While at YDI, Zavecz continued to work on the YDI Code, including each of the MAPA, OASnt, and FPAex products.  Zavecz worked at YDI for approximately a year and a half, until he was terminated in January of 2001.  (RT at Risch Decl. Ex. D at p. 468:27.)


**Defendants' New Weir Products**

In 2003, YDI became aware of new products that Defendants had developed.  Those products are Weir PSFM, Weir PW, Weir DM, Weir DMA, LithoWorks PW, LithoWorks PEB (the "TEA Products").  The source code of the TEA Products (the "TEA Code") is written in the Visual Basic programming language ("VB").  (RT at Risch Decl. Ex. D at p. 529:3-34.)


**Prior Litigation**

The parties have been engaged in various forms of litigation since Zavecz's termination in January 2001.  The only other litigation related to intellectual property was *Yield Dynamics v. TEA Systems, et al.*, no. 1-03-CV-000690 in the Superior Court of California, County of Santa Clara (the "Trade Secrets Litigation").  In that case, YDI alleged, among other causes of action, that Zavecz, TEA, and SLS had misappropriated YDI's trade secrets.  The Trade Secrets Litigation was

---

[1] Schedule 3.12 of the Asset Agreement lists the Purchased Assets, which include all copyrights in OASnt, FPAex, and MAPA.  (Risch Decl. Ex. E, third to last page.)

1    put to a two-week bench trial in August and September 2005, after which the court granted a

2    defense motion for judgment.  The Superior Court did not, however, rule one way or the other as to

3    whether Zavecz, TEA, and/or SLS had copied the YDI Code.  That case is now on appeal before

4    the Court of Appeal of California, Sixth Appellate District in case no. H029604 (the "Trade

5    Secrets Appeal").  (See Statement of Decision at Risch Decl. Ex. X and Notice of Appeal at Ex.

6    Y.)

7

8    **Copyright Registration**

9        YDI obtained a Certificate of Registration for the MAPA, OASnt, and FPAex products, the

10   effective date of which is March 4, 2005.  (Risch Decl. Ex. A.)

11

12   **Copying**

13       A detailed analysis of the source code for Defendants' Weir and LithoWorks products

14   shows that extensive copying and use of YDI Code took place.  Plaintiff's expert witness, Peter

15   Smith, has determined that 79% of the "import" procedure file (called "Import.bas") are functions

16   that have been improperly copied or used, or rely on the copied functions.  This includes the direct

17   copying of approximately 8 procedures (comprising approximately 60+ pages of source code), as

18   well as the use of those procedures in other functions used by every single Weir and LithoWorks

19   product.  (Smith Decl. ¶¶ 26-27, 32 and Ex. A.)

20       In the Trade Secrets Litigation, the Superior Court's ruling for Defendants was based on its

21   findings regarding the independent economic value of YDI's claimed trade secrets.  The ruling

22   does not speak to whether Defendants copied YDI code.  (See Statement of Decision ("SOD") at

23   Risch Decl. Ex. X.)

24

25                    **STANDARD FOR GRANTING SUMMARY JUDGMENT**

26       Under F. R. CIV. P. 56(c), the "judgment sought **shall** be rendered forthwith if the

27   [evidence] show[s] that there is no genuine issue as to any material fact and that the moving party

28   is entitled to a judgment as a matter of law."  (emphasis added).

1      Here, where undisputed evidence shows direct copying, to avoid summary judgment under

2   Rule 56, Defendants must show admissible evidence of non infringement, as stated under the

3   Supreme Court's rule in <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986):

4              <u>[T]here is no issue for trial unless there is sufficient evidence favoring the</u>
               <u>nonmoving party for a jury to return a verdict for that party.</u> If the evidence
5              [of the nonmovant] is merely colorable, or is not significantly probative,
               summary judgment may be granted.
6

7   <u>Id.</u>, 477 U.S. at 249-250 (emphasis added).

8      Summary judgment should be granted on this motion if no reasonable juror would find in

9   favor of Defendants.  <u>Anderson</u>, 477 U.S. at  255; <u>U.S. v. Diebold</u>, 369 U.S. 654, 655 (1964).

10

11                              **<u>ARGUMENT</u>**

12   **I.   <u>THE SOURCE CODE IS COPYRIGHTED AND COPYRIGHTABLE.</u>**

13      The material at issue is copyrighted and copyrightable.  The registration is attached to the

14   Complaint as Exhibit A.  The bar for copyrightability is quite low—even the smallest amount of

15   creativity is protected.  <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 345 (U.S. 1991)

16   ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.

17   The vast majority of works make the grade quite easily, as they possess some creative spark, 'no

18   matter how crude, humble or obvious' it might be. Originality does not signify novelty; a work

19   may be original even though it closely resembles other works so long as the similarity is fortuitous,

20   not the result of copying.") (citation omitted).

21      It is also well settled that source code can be protected. <u>Apple Computer, Inc. v. Franklin</u>

22   <u>Computer Corp.</u>, 714 F.2d 1240, 1249 (3d Cir. 1983).  Finally, even the most "thin" copyright can

23   be infringed if protected expression is copied verbatim.  <u>Apple Computer v. Microsoft Corp.</u>, 35

24   F.3d 1435, 1442 (9th Cir. 1994).

25      Here, several factors prove copyrightability as an undisputed fact:

26      1.  Defendant Zavecz put copyright notices in the source code.  (Risch Decl. Exs. G, I, K,

27   M, N, P, R, T.)  Therefore, he is estopped from claiming that this very same code is

28   uncopyrightable.  <u>Comer v. Micor, Inc.</u>, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel

'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'") (citation omitted).  Defendants represented that the code was copyrightable when they sold it to YDI, and YDI relied on that representation, in part by bringing this suit.

2.  The copied code comprises approximately 66 pages.  This is not a "words or phrase" type of issue.  (Smith Decl. ¶ 27.)

3.  The particular expression in this source code was not required by functionality.  The person writing this source code had many choices for function names, variable names, structure and sequence, comments, and other forms of creative expression in how to achieve the results. (Smith Decl. ¶ 13.)

## II.  DEFENDANTS ARE COLLATERALLY ESTOPPED FROM DENYING INFRINGEMENT.

Defendants made an Offer of Judgment in this case.  (Docket No. 12.)  Plaintiff accepted that offer as to one of the related parties, Sub-Lambda Systems, Inc.  (Docket No. 13.)  As such, judgment must issue (indeed, it should have already, and Plaintiff requests that the Court direct the clerk to enter such judgment).  Mallory v. Eyrich, 922 F.2d 1273, 1279 (6th Cir. 1991) ("once the parties agree on the terms of a Rule 68 judgment, the court has no discretion to withhold its entry"); Webb v. James, 147 F.3d 617, 621-621 (7th Cir. 1998) ("Thus, there is no opportunity for a district court to even consider allowing rescission of the Rule 68 'contract.'  Once the acceptance has been properly filed, judgment must be entered.").

Because a judgment has been issued which awards both damages and an injunction against a related party, Defendants are bound by a finding of infringement.  All that remains to be determined are remedies.[2]

Collateral estoppel (here issue preclusion) applies where "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first

---

[2] Indeed, given the current Rule 68 judgment, the issue of injunction is also precluded.  The only difference in issues between the Defendants is damages.

proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 (9th Cir. 2006) (citation omitted).  Here, all of the elements are present.

First, the issue of infringement is identical; the same parties were alleged to have infringed the same copyrights with the same infringing source code.

Second, a Rule 68 judgment is a final determination on the merits.  <u>Green v. Ancora-Citronelle Corp.</u>, 577 F.2d 1380, 1383 (9th Cir. 1978) ("The fact that this judgment was the result of the parties' stipulation of settlement does not detract from its being considered a conclusive determination of the merits of that action for purposes of collateral estoppel where, as here, it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action."); <u>Reyn's Pasta Bella</u>, 442 F.3d at 746 (judgment based on settlement agreement is final judgment on the merits).

Third, the parties are in privity: they have the same counsel, and Defendant Zavecz formed and owns Sub-Lambda Systems, Inc., and Defendant TEA Systems markets Sub-Lambda Systems software.  (<u>See</u> Zavecz deposition transcript at Risch Decl. Ex. B, pp. 7:11-24, 307:2-23, 311:23-313:21.)  As such, the parties were in a position to protect each others' interests; they did not make any different arguments; instead, they each made the same Rule 68 offer.  Thus, the remaining defendants controlled this suit and received adequate representation.  <u>In re Schimmels</u>, 127 F.3d 875, 881 (9th Cir. 1997) ("First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.") (citation omitted).

Defendants cannot avoid collateral estoppel by claiming that the judgment is merely a settlement.  Rule 68 judgments are a form of consent judgment. <u>Mallory</u>, 922 F.2d, at 1280.  Even so, they are a judgment nonetheless.  <u>Webb</u>, 147 F.3d at 621-622.  They have full preclusive effect. <u>Fafel v. Dipaola</u>, 399 F.3d 403, 414-415 (1st Cir. 2005) (affirming federal injunction barring further state court action on same issues due to preclusive effect of Rule 68 judgment).

1    The terms of the judgment here are quite clear—Sub-Lambda Systems must pay damages

2  and is subject to an injunction.  This judgment could not be so if there were no infringement.  If

3  Defendants wanted a settlement that avoided a finding of infringement, they should have

4  negotiated for a private settlement agreement, not a consent judgment.

5    While the offer was not accepted as to Defendants Zavecz and TEA, the only issue to be

6  tried is the remedy.  The judgment does not have preclusive effect on that because the profits for

7  those Defendants might be different.  The source code, however, is not different.  (Smith Decl. ¶

8  32.)

9    Furthermore, Zavecz cannot rely on the state court ruling in this matter. The Superior Court

10  did not address the issue of copying, as it ruled on "independent economic value" instead.  (Risch

11  Decl. Ex. X.)  None of the findings affect creative expression in the source code, nor do they affect

12  infringement.

13

14  **III.   THERE IS NO FACTUAL DISPUTE THAT DEFENDANTS COPIED YDI'S**

15  **SOURCE CODE.**

16    There is no basis for Defendants to assert a factual dispute about their copying of the YDI

17  Code, as that copying has been established beyond any doubt by YDI's expert, and admitted by

18  Defendants' expert.

19    **A.  YDI's Expert's Analysis Proves Copying by Defendants.**

20    In his declaration in support of this Motion, Mr. Smith sets forth his methodology, the

21  facts, and his conclusions in exhaustive detail.  Specifically, Mr. Smith found that a number of data

22  import functions were copied and translated from the YDI Code into the TEA Code.  (Smith Decl.

23  ¶¶ 26-33.[3])  For example, Mr. Smith found in one instance that a function in the TEA Code was a

24  copy of a function in the YDI code "[i]n almost all respects."  (Smith Decl. Ex. G p. 6.)

25

26  _____

[3] In his declaration, Mr. Smith uses the terms "RPL code" and "Basic code" to discuss the YDI
Code and TEA Code, respectively.  (Smith Decl. ¶ 23.)  For convenience and consistency,

27  "YDI Code" and "TEA Code" are substituted for "RPL code" and "Basic code" throughout this
Motion.

28

The following are some of the indicia of copying that Mr. Smith identified in the YDI Code and the TEA Code:

1. <u>Common or similar variable names</u> (see, e.g., Smith Decl. ¶¶ 36-37, Ex. B p. 4.)

2. <u>Common or similar function names</u> (see, e.g., Smith Decl. Ex. F p. 4 ("$fixempty…FixEmpty").)

3. <u>Common comment style and text</u> (see, e.g., Smith Decl. ¶¶ 35, 41, 46-48, 71, Ex. B p. 5, Ex. C p. 3.)

4. <u>Common flow of control</u> (see, e.g., Smith Decl. ¶¶ 55-56, Ex. C p. 4 ("The fact that the [TEA Code] uses the same order as the original [YDI Code] is a minor indication that the code was copied"), Ex. E p. 11 ("extraneous loop").)

5. <u>Common formatting conventions</u> (see, e.g., Smith Decl. ¶ 57, Ex. C p. 4 ("the [TEA Code] follows the same inconsistent convention…"), Ex. E p. 8 ("arbitrary lexical conventions").)

6. <u>Common styles of line length</u> (see, e.g., Smith Decl. ¶¶ 35, 71)

7. <u>Code style of one language found in the other</u> (see, e.g., Smith Decl. Ex. C p. 4 ("There is no reason for the [TEA Code] to have done this").)

8. <u>Nonsensical or vestigial code</u> (see, e.g., Smith Decl. ¶¶ 36-37, 49, 52-54, 68-69, 74-76, Ex. C p. 4 ("…an interesting anomaly: it's not actually used by the rest of the [TEA Code] at all"), Ex. E p. 10 ("This was not used in the [TEA Code] routine at all but is used in the [YDI Code]"), Ex. H p. 14 ("It seems unusual for a write to, just by chance, try to use a function that doesn't even exist for them").)

9. <u>Common typographical errors</u> (see, e.g., Smith Decl. ¶¶ 39-40, 57.)

10. <u>Common unusual design decisions</u> (see, e.g., Smith Decl. ¶¶ 42-44, 64-67, 73, Ex. F p. 5.)

11. <u>Evidence of search-and-replace</u> (see, e.g., Smith Decl. ¶¶ 58-59, Ex. B p. 3.)

This is undisputed and undisputable evidence of direct copying.

**B. Defendants' Expert Admitted Copying Was the Most Likely Explanation for YDI's Expert's Findings.**

At his deposition in the Trade Secrets Litigation, Defendants' expert, Robert Stillerman, made numerous admissions of probable direct copying from the YDI Code into the TEA Code, including the following:

> 21    Q   I'll rephrase it.  Isn't it true that at
> 22 least some portion of the ss wafcenter the KLA code,
> 23 was -- appears in the tlarraycenter [YDI Code], and
> 24 that some of that code, whether it be from the KLA
> 25 or the tl array center appears in the [TEA Code]
> 1 array center code?
> 2    A   **Yes, the code is similar, might be -- some**
> 3 **lines may be identical.**

(Risch Decl., Ex. C at pp. 60:21-61:3)

> 3    Q   Right.  So the fact that there's an
> 4 identical line based on two extra spaces between the
> 5 mm and the x, how does that affect your opinion one
> 6 way or another as to whether or not Exhibit 4, the
> 7 [TEA Code] was copied from either the KLA
> 8 code or the [YDI Code] array center code?
> 9        MR. ACKERMAN:  He's referring to this code,
> 10 not that one (indicating).
> 11        THE WITNESS:  Oh, you're -- okay, referring
> 12 to the import.bas [in the TEA Code].
> 13    Q   Yes.  You would agree with me that there's
> 14 two spaces in that same line in all three, Exhibits
> 15 4, 8 and 9?
> 16    A   Yes, I would agree with that.
> 17    Q   Does that affect your opinion at all as to
> 18 whether Exhibit 4 --
> 19    A   **It's possible that that line -- you know,**
> 20 **that portion of the line was copied**

(Risch Decl., Ex. C at pp. 62:3-20)

> 10    Q   Okay.  Let's go to a comparison between
> 11 Exhibit 11 and Exhibit 12.  So Exhibit 12 is the
> 12 [YDI Code], right?
> 13    A   Correct.

14    Q   And Exhibit 11 is the -- is the stdfit_std
15 for MathUtility.bas [in the TEA Code], do you agree?
16    A   Correct.
17    Q   All right.  Can I have you look now at Line
18 26 of Exhibit 12 and Line 3501 of Exhibit 11.  Do
19 you see that?
20    A   Yes, I do.
21    Q   Okay.  So the first one says "coef," and
22 then there's an equal on one, but not an equal on
23 the other.  And then it says, "returned vector of
24 coefficients" on Exhibit 12, and "vector of
25 coefficients, including offset."  Do you see that?
00078
1    A   Yes, I do.
2    Q   Now, I assume we're both in agreement,
3 these lines are not identical, right?
4    A   Correct.
5    Q   Would you agree with me that the comments
6 are saying the same basic thing?
7    A   I would agree with that, yes.
8    Q   Now, if you go to the next line, they're
9 similar but not the same, correct?
10    A   Correct.
11    Q   And if you go to the next line, they're
12 similar but not the same, and they both end with a
13 comma.  Do you see that?
14    A   It's hard for me to -- I believe that's
15 correct, yes.
16    Q   Do you know of any -- do you have any
17 explanation as to why there's a period at the end of
18 the coef comment line, and there's a comma at the
19 end of the cov comment line?  That wouldn't be
20 explained, for example, by a programmer's coding
21 style, would it?
22    A   No.
23    Q   In fact, the only way to really explain
24 that would be that if [the YDI Code] was copied to the [TEA Code]
25 and then modified a little bit; isn't that true?
00079
1    A   **That's probably likely, yes.**

(Risch Decl., Ex. C at pp. 77:10-79:1)


25    Q   Okay.  Now, let me have you to turn to Page
00082
1 6 of Exhibit 11, and turn to Page 3 of Exhibit 12.

2 Okay.  First, if you look at Line 3773 of Exhibit 11
3 and 176 of Exhibit 12.
4       Would you agree with me that other than the
5 comment character, those two lines are identical?
6    A  **Yes.**
7    Q  Now we move down two lines to 3775 and to
8 Line 178, and it appears that they're not identical,
9 right?
10    A  Yeah, they're similar but not identical.
11    Q  They start the same, "Calculation aborts if
12 vector dtp is all," and then there's a zero, they
13 match to that point.
14    A  Correct.
15    Q  And in Exhibit 12, which is the [YDI Code],
16 there's an apostrophe s.  Do you see that?
17    A  Correct.
18    Q  And in Exhibit 11 [which is the TEA Code,] there's an apostrophe --
19 two apostrophes, and it says vSingularity.  Do you
20 see that?
21    A  Yes.
22    Q  That doesn't makes sense, zero apostrophe
23 vSingularity, does it?
24    A  Well, if you read it with the next line, it
25 might make sense.  VSingularity thresh equals 1
00083
1 divided by the tolerance times VEC maximum.
2    Q  Isn't it more likely that Mr. Zavecz did a
3 cut -- search and replace and the S turned into
4 vSingularity, the way it did in other places?
5    A  **That is possible, yeah.**
6    Q  Now -- and you commented on the next
7 comment line thresh equals one slash --
8    A  Uh-huh.
9    Q  They appear to be slightly different, but
10 communicating the same thing, correct?
11    A  Yes.
12    Q  Okay.  Did the similarity in comments like
13 this affect your opinion at all as to whether or not
14 portions of the [YDI Code] were copied into, at
15 least as a starting point, for let's say this
16 function?
17    A  **Yeah, something like this could be**
18 **indicative of being copied.**

(Risch Decl., Ex. C at pp. 81:25-83:18)

Finally, Mr. Stillerman made clear that he could not give an opinion that the entire source code was independently developed:

> 11    Q   Are you going to give any opinion at trial
> 12 about whether or not the [TEA Code] was written
> 13 independently?
> 14    A   Yes.
> 15    Q   What opinion are you going to give on that?
> 16    A   That the -- you know, that there's a strong
> 17 likelihood that the [TEA Code] was written independently.
> 18    Q   All of it or some of it?
> 19    A   All of it.
> 20    Q   Okay.  Any other opinions relating to
> 21 independent creation?
> 22    A   The -- let me just think about my prior
> 23 statement.  I think the predominance of it -- I
> 24 don't really know how the source -- how the WEIR
> 25 modules were created.  But based on the evidence
> 00113
>   1 I've seen, you know, the predominance of it seems
>   2 like it was done independently.  **Whether or not**
>   3 **small snippets of [the TEA Code] were captured from earlier**
>   4 **documents, it's a possibility.**

(Risch Decl., Ex. C at pp. 112:11-113:4)

### C.  The Facts Presented Are More Than Sufficient to Grant Summary Judgment.

The evidence discussed by Peter Smith and the admissions by Robert Stillerman lead to one and only one conclusion: that Defendants copied from Plaintiff's source code, thus infringing on both the 17 U.S.C. § 106(1) right of reproduction and the 17 U.S.C. § 106(2) right to create derivative works.

The evidence presented this constitutes direct evidence of copying.  Zavecz's own inclusion of the words "old" or "not used – too slow" are admissions in his own words that he copied from the YDI code.  (Smith Decl. ¶ 68 and Ex. H p. 14.)  Broderbund Software, Inc. v. Unison World, Inc., 648 F. Supp. 1127, 1135 (N.D. Cal. 1986) (identical element that does not "fit" with new program supports direct evidence of copying).  As such, no "substantial similarity" analysis is required.

1    Even under an access/substantial similarity test, there can be no dispute that copying took

2    place.  There is no dispute that Defendants had access; they wrote the code.  Access at the time of

3    copying is irrelevant, as memory may be used.  <u>Universal Pictures Co. v. Harold Lloyd Corp.</u>, 162

4    F.2d 354, 360 (9th Cir. 1947); <u>Wihtol v. Wells</u>, 231 F.2d 550, 553 (7th Cir. 1956).

5    Furthermore, striking similarities in identical lines and comments shows that Defendants'

6    work is infringing, even if some lines were not copies.  <u>Hayden v. Chalfant Press, Inc.</u>, 281 F.2d

7    543, 548 (9th Cir. 1960) ("the existence of common errors is one of the most persuasive proofs of

8    copying, second only to direct evidence of copying."); <u>Twentieth Century-Fox Film Corp. v.</u>

9    <u>Stonesifer</u>, 140 F.2d 579, 582 (9th Cir. 1944) ("[T]he numerous striking similarities in the two

10   works can not in the light of all the evidence be said to constitute mere chance."); <u>Koontz v.</u>

11   <u>Jaffarian</u>, 617 F. Supp. 1108, 1114-15 (E.D. Va. 1985) (reproduced errors are evidence of

12   copying).

13   It is sufficient that merely part of the works are identical.  <u>Engineering Dynamics, Inc. v.</u>

14   <u>Structural Software, Inc.</u>, 46 F.3d 408, 410 (5th Cir. 1995) ("[T]he more exact a duplication of

15   constituent pieces of a work the less overall similarity that may be required.");  <u>Universal Pictures</u>,

16   162 F.2d, at 360;  <u>Markham v. A. E. Borden Co.</u>, 206 F.2d 199, 202 (1st Cir. 1953);   See, for

17   example, <u>John Alden Homes v. Kangas</u>, 142 F. Supp. 2d 1338, 1344 (D. Fla. 2001) (despite

18   credible denials of copying, the two works were so similar that the Court could not accept any

19   inference other than copying).

20   Finally, there can be no argument that there is no substantial similarity because only

21   functional elements were copied.  First, many of the comments were copied, and such comments

22   are not functional.  (Smith Decl. ¶¶ 10-11.)  Indeed, comments were copied that have nothing to do

23   with the source code they are next too—this cannot be considered functional.  Second, it is

24   undisputed that Defendants had many choices in how to write these programs.  (Smith Decl. ¶ 12.)

25   Thus, the structure, sequence, and organization could have been different, in addition to variable

26   names and other features.  These were original elements not required by the function of importing

27   data.  Third, Defendants copied code and then "commented it out."  (Smith Decl. ¶¶ 52-54.)  While

28

this is definitely copying, it cannot be functionally required, because the copied code was used only to aid Defendants in their writing rather than for some other functional purpose.

Based on the law and the undisputed facts, no reasonable juror would find that Defendants did not copy the source code at issue.

## IV.   THERE IS NO DISPUTE THAT THE COPYING WAS WILLFUL.

No reasonable jury could find that the infringement was accidental.  Zavecz put copyright notices into his old code—he understood quite well that it was protected when he copied it.  (Risch Decl. Exs. G, I, K, M, N, P, R, T.)

## V.   DEFENDANTS' COPYING IS NOT FAIR USE.

None of the fair use factors weigh in favor of Zavecz.  The answer admits "*de minimis*" copying; it is unclear what this means.  There is no *de minimis* defense.  <u>Konor Enterprises, Inc. v. Eagle Publications, Inc.</u>, 878 F.2d 138, 141 (4th Cir. 1989).  It appears to be an admission of infringement, but perhaps it is a fair use defense.  However, the undisputed facts show that there could not be fair use:

### A.  This Was a Commercial Use.

There is no dispute that both the underlying code and the derivative work were for commercial use.  (Risch Decl. Ex. E.)  This is presumptively an unfair exploitation.  <u>Harper & Row, Publishers, Inc. v Nation Enterprises</u>, 471 U.S. 539, 562 (1985).

### B.  The Nature of the Copyrighted Work.

This factor weighs in favor of YDI.  First, despite any finding about trade secrecy by the Superior Court (which is pending on appeal), there is no dispute that this work was not published.  (Risch Decl. Ex. X.)  This favors YDI.  <u>Harper & Row</u>, 471 U.S. at 564.  Second, the work was assigned by the infringer to YDI; this was not a public work for which a broad dissemination had some great public value.  (Risch Decl. Ex. E.)

//

**C.  The Amount and Substantiality of the Copied Work.**

There is no dispute that these were the import routines of the copied work and that the entire program would not function without them.  (Smith Decl. ¶ 25; Zavecz deposition at Risch Decl. Ex. B p. 278:4-11.)  While the import routines are not the final end product that the user sees, and while the copied work is much larger than the 60 or so pages that were copied from, the import routines go to the "core" of the product because the product would be incomplete without them.  This favors YDI.  Harper & Row, 471 U.S. at 564-565.  As Learned Hand made clear, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."  Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir 1936).

**D.  The Effect of Use on the Potential Market.**

This factor also favors YDI.  YDI cannot deny that there is a factual dispute about how much Zavecz competes with YDI with respect to the products at issue.  That said, it is undisputed that YDI created a follow-on work that used the original copyrighted material.  It is also undisputed that YDI had difficulty selling this product.  (Risch Decl. Ex. X.)

Any **potential** effect on that market is sufficient to negate fair use.  Harper & Row, 471 U.S. at 568 ("More important, to negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the potential market for the copyrighted work.' This inquiry must take account not only of harm to the original but also of harm to the market for derivative works.) (citation omitted).  Here, while Zavecz might complain that he is not competing now, if he were allowed to continue to use the infringing code and expand on it, it might very well affect the market for YDI's software.

Because all of the fair use factors favor YDI, Zavecz cannot maintain fair use as a matter of law.

//

//

//

//

## VI.  DEFENDANTS ARE ESTOPPED FROM CLAIMING THE BENEFITS OF 17 U.S.C. § 412.

Defendants cannot claim that 17 U.S.C. § 412 applies to protect them from statutory damages or from attorneys' fees.  In general, "equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have…" Humetrix, Inc. v. Gemplus S.C.A., 268 F.3d 910, 918 (9th Cir. 2001).   As the Ninth Circuit has noted, equitable estoppel applies when:

 (1) an admission, statement, or act inconsistent with the claim afterwards asserted;

(2) action by the other party on the faith of such admission, statement, or act; and

(3) injury to such other party from allowing the first party to contradict or repudiate such admission, statement, or act.

Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1091 n.7  (9th Cir. 2003).

The application of equitable estoppel fits this case.  First,  Defendants placed the copyright notice in the source code prior to selling it to YDI.  (Risch Decl. Exs. G, I, K, M, N, P, R, T.)  This is a clear admission that Zavecz believed that the code was copyrighted and that he expected others to respect that right.  Second, YDI relied on such a representation by purchasing the source code and all of the copyright in it, as well as bringing this suit.  (Risch Decl. Ex. E at p. 2 ("'Purchased Intellectual Property' shall mean all…copyrights…").)  Finally, YDI would be injured by not being entitled to statutory damages and attorneys' fees if Defendants were able to repudiate their prior admission that this was copyrighted material.  17 U.S.C. § 504(c) (2006).

Defendants had clear and unequivocal notice that copyright claims were being made in the code and cannot deny the same.  They will suffer no untoward injury if the Court holds them to their representation.  The stated purpose for § 412 appears in H. REP. NO. 94-1476 (1976)[4]: "The great body of unpublished works now protected at common law would automatically be brought under copyright and given statutory protection. The remedies for infringement presently available at common law should continue to apply to these works under the statute, but they should not be given special statutory remedies unless the owner has, by registration, made a public record of his copyright claim."

---

[4] A copy is attached to this brief as Exhibit 1.

1    Here, no such public record was necessary. Defendants—the original owners and authors

2  of the source code at issue—had notice, and must be estopped from claiming otherwise in order to

3  obtain the benefits of a statute that was not intended to cover a situation such as this one.

4    **<u>CONCLUSION</u>**

5    For the above reasons, this Court should find that there is no genuine issue as to any

6  material fact, and this Court should therefore grant summary judgment as to copyright liability in

7  favor of YDI and against Defendants TEA and Zavecz.

8

9                                        Respectfully submitted,

10                                       RUSSO & HALE LLP

11  Dated: June 29, 2006           By:    /s/ Michael Risch
                                          Michael Risch
12

13                                       Attorneys for Plaintiff
                                         YIELD DYNAMICS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Motion for Partial Summary Judgment**

Case No. 06-C-00331 VRW

18