1  JACK RUSSO (State Bar No. 96068)
   MICHAEL RISCH (State Bar No. 197600)
2  RUSSO & HALE LLP
   401 Florence Street
3  Palo Alto, CA 94301
   Telephone: (650) 327-9800
4  Facsimile: (650) 327-3737
   Email: jrusso@computerlaw.com
5  Email: mrisch@computerlaw.com

6  Attorneys for Plaintiff
   YIELD DYNAMICS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12 | YIELD DYNAMICS, INC., a California corporation, | Case No. 06-C-00331 VRW |
13 | Plaintiff, | **PLAINTIFF YIELD DYNAMICS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
14 | vs. | |
15 | TEA SYSTEMS CORPORATION, a Pennsylvania corporation; TERRENCE E. ZAVECZ, an individual; DONNA ZAVECZ, an individual, | Date:    November 2, 2006
Time:    2:00 P.M.
Crtrm.:  Courtroom 6, 17th Floor
Judge:   Hon. Vaughn R. Walker |
16 | | |
17 | Defendants. | |
18 | | |

# TABLE OF CONTENTS

**INTRODUCTION**............................................................................................................................ 1

**ARGUMENT** ................................................................................................................................. 2

    **I.**    **ISSUE PRECLUSION BARS DEFENDANTS FROM RE-LITIGATING THE ISSUES ON WHICH THEY CONSENTED TO JUDGMENT PREVIOUSLY**............................................... 2

    **II.**   **PLAINTIFF'S SOFTWARE IS UNDENIABLY COPYRIGHTABLE EXPRESSION** ................................................................................................ 3

        A.    Defendants Admit And Fail To Refute Copying ........................................... 3

        B.    The Idea and Expression in the Source Code and Comments At-Issue Are Separable, Making the Expression Protected Under Copyright Law............. 4

        C.    Defendants Apply the Incorrect Legal Test For Copyrightability; Regardless, Defendants Did Copy Protectable Expression............................ 6

            1.    Defendants' Copying Was Virtually Identical to the Original, Making a Substantial Similarity Analysis Unnecessary...................... 6

            2.    Under the Ninth Circuit's Substantial Similarity Test, the Undisputed Facts Prove that Defendants Copied Protectable Expression ............ 7

                a.    Source of Similarities............................................................... 7

                b.    Analytic Dissection .................................................................. 8

                c.    Subjective Comparison .......................................................... 11

            3.    The Gates/Altai Test Yields the Same Result................................. 12

        D.    Zavecz's Declaration Is a Set of Self-Serving, Bare Assertions Unsupported by Any Independent Facts and is Insufficient to Defeat Summary Judgment ....................................... 12

        E.    Equitable Estoppel Bars Defendants From Claiming the Software Is Not Copyrightable Since They Originally Placed the Copyright Notices In It ... 13

    **III.**  **PLAINTIFF HAS ONLY REQUESTED SUMMARY JUDGMENT THAT STATUTORY DAMAGES AND FEES ARE AVAILABLE; ANY ARGUMENT REGARDING A LACK OF DAMAGES BY DEFENDANTS IS NOT SUFFICIENT TO DEFEAT THIS SUMMARY JUDGMENT MOTION**......................................................... 14

**CONCLUSION** ........................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986) .................................................................13

Apple Computer v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994) ......................................6, 7, 12

Baxter v. MCA, Inc., 812 F.2d 421 (9th Cir. 1987).......................................................................12

CDN Inc. v. Kapes, 197 F.3d 1256 (9th Cir. 1999) ................................................................1, 4, 5

Computer Associates Int'l, Inc. v. Altai, Inc., 982 F.2d 693 (2nd Cir. 1992)............................6, 12

Computer Assocs. Int'l v. Quest Software, Inc., 333 F. Supp. 2d 688 (N.D. Ill., 2004) .................9

Cybermedia, Inc. v. Symantec Corp., 19 F. Supp. 2d 1070 (N.D. Cal. 1998) ........................1, 7, 12

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)................................................1, 5

Gates Rubber Co. v. Bando Chem. Indus., 9 F.3d 823 (10th Cir. 1993) ......................................12

Green v. Ancora-Citronelle Corp., 577 F.2d 1380 (9th Cir. 1978).................................................2

In re Schimmels, 127 F.3d 875 9th Cir. 1997)................................................................................3

Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1037 (9th Cir. 2000) .............................................1

Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741 (9th Cir. 2006)....................................2

Willis v. Pac. Mar. Ass'n, 244 F.3d 675 (9th Cir. 2001) ..............................................................13

## STATUTES

17 U.S.C. § 412 (2006) .................................................................................................................15

17 U.S.C. § 504 (2006) .................................................................................................................15

## RULES

FED. R. CIV. P. 56..........................................................................................................................13

FED. R. CIV. P. 68............................................................................................................................2

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com<sup>sm</sup>

**Reply in Support of Motion for Partial Summary Judgment**

iii

Case No. 06-C-00331 VRW

# INTRODUCTION

Defendants have admitted copying the software of Plaintiff Yield Dynamics, Inc. ("YDI" or "Plaintiff")—software into which said Defendants put copyright notices. Both elements of infringement (ownership of copyright and copying)[1] have essentially been admitted: Defendants' sole defense to YDI's Motion for Partial Summary Judgment is that the copying was allegedly of unprotected mathematical "algorithms" only. In other words, they concede the copying element of infringement, and the only issue before this Court is the legal one of whether that copying was **only** of unprotectable mathematical algorithms. The undisputed facts show that protected creative expression was copied.

The standard for protectable expression is extremely minimal. CDN Inc. v. Kapes, 197 F.3d 1256, 1260 (9th Cir. 1999). "The vast majority of works make this grade quite easily." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). **YDI is not claiming that Zavecz copied a mathematical algorithm; YDI has shown that Zavecz copied the identical expression of the prior code, including the order, comments, variable names, and even spacing, line breaks, and capitalization, none of which is required by the "idea" of the algorithm**. There can be no doubt that the copied materials in this case are, in fact, subject to the protections of the copyright laws.

The Court addressed the very defense set forth here in a recent case:

> Defendants assert that the similarities . . . can be explained by common authorship, functional constraints, and common use of programming tools. This explanation is unpersuasive. Defendants concede, as they must, that **any of the hundreds of code lines . . . could have been written differently, even as constrained by functional necessity** and the use of common programming tools. **Common authorship alone does not explain why line upon line of the two codes are identical or nearly identical, even to the extent of containing a common typographical error**.

Cybermedia, Inc. v. Symantec Corp., 19 F. Supp. 2d 1070, 1077 (N.D. Cal. 1998) (Fogel, J.) (emphasis added). This case is no different; Partial Summary Judgment must be granted.

---

[1] "A claim for copyright infringement has two elements: '(1) ownership of the copyright; and (2) infringement - that the defendant copied protected elements of the plaintiff's work.'" Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1037 (9th Cir. 2000).

# ARGUMENT

## I. ISSUE PRECLUSION BARS DEFENDANTS FROM RE-LITIGATING THE ISSUES ON WHICH THEY CONSENTED TO JUDGMENT PREVIOUSLY.

Issue preclusion, also known as collateral estoppel, prevents Defendants from re-arguing that they have not infringed Plaintiff's copyright as there is already a final judgment of copyright infringement by a party in privity with them. Issue preclusion applies where "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006) (citation omitted).

First, the issue decided in the judgment is identical to the issue on this motion, namely copyright infringement. Defendants' opposition does not dispute this fact in any way. The first element is easily met here.

Second, the proceeding ended with a final judgment on the merits. Although Defendants state that the issue was not fully and fairly litigated, they do not deny that the judgment from the Rule 68 offer is a final judgment. Furthermore, the law in this area is clear: consent judgments, like the Rule 68 judgment here, are final judgments on the merits for purposes of issue preclusion. Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1383 (9th Cir. 1978); Reyn's Pasta, 442 F.3d at 746. In Green, the Court found that a stipulated judgment was a "conclusive determination of the merits of that action for purposes of collateral estoppel." Green, 577 F.2d at 1383. Similarly here, the judgment was the result of an offer and acceptance between the parties under Rule 68. This judgment is a final judgment on the merits, and it precludes re-litigation of the issues necessarily decided by that judgment – copyright infringement.

Third, the remaining Defendants in this motion, Mr. Zavecz and TEA, are in privity with the party who entered the consent judgment, Sub-Lambda Systems, Inc., such that the judgment has preclusive effect against them. Thought Defendants half-heartedly challenged privity, their silence is more telling than their opposition.

The underlying policy of the privity element is to test whether it is equitable to bind one party to the decisions of others. There could not be a more fair situation than the one at bar. The undisputed facts show that many of the relationships discussed in In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) apply to that of Mr. Zavecz and TEA to Sub-Lambda.[2] Mr. Zavecz controls both corporate entities, as he is the only employee of TEA and Sub-Lambda, let alone the sole active executive. Zavecz Decl. ¶¶ 14-16. All three are represented by the same attorney, such that it is clear that the interests of the three are "so closely aligned as to be virtually representative," and it makes clear that their interests were "represented adequately." See dkt. nos. 9-12. These three parties are in privity, and that fact is undisputed.

Accordingly, this Court should enter partial summary judgment based on issue preclusion alone.

## II. PLAINTIFF'S SOFTWARE IS UNDENIABLY COPYRIGHTABLE EXPRESSION.

Even if the Court does not find preclusion, it is undisputed that copyrightable expression was copied. Defendants' opposition depends entirely on a claim that the copied source code and comments can only be expressed in one way. Defendants' Memorandum of Points and Authorities in Opposition to Motion for Partial Summary Judgment ("Opposition") at p. 1:21-24. This defense both implicitly and explicitly admits to copying by Defendants, such that the only issue remaining before this Court is a legal determination of whether the copied source code and comments at issue here are copyrightable.

### A. Defendants Admit And Fail To Refute Copying.

Defendants' **only** defense to actual copying is merely a red herring. Defendants rely on the fact that Mr. Smith did not find word-for-word copying in the source code. As Mr. Smith explains, Defendants copied and translated the original code to another language, and as such necessarily

---

[2] In their Opposition, Section IV.C., Defendants made only a single citation to the factual record before this Court. That citation was to four pages of the "RT;" however, the pages cited discuss only an issue of software coding and not the relationship of Sub-Lambda to Mr. Zavecz or TEA. There was no

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com℠

**Reply in Support of Motion for
Partial Summary Judgment**

3

Case No. 06-C-00331 VRW

made modifications to the original code.  Smith Decl. at ¶ 12.  While in many instances, such as in comments, Mr. Smith **did** find word-for-word copying, Defendants' point is one which Mr. Smith addresses directly twice in his declaration: "…this does not mean that every line from every function was copied; in a translation one would not expect to see this;" "…[b]ecause the code is being translated, and because it is being actively modified, some of the indications of copying, although present, are not compelling enough to be considered 'direct copying.'"  Id. at ¶¶ 27, 31.  There can be **no doubt** that Mr. Smith found copying, and that his finding is well founded in undisputed fact.  Id. at ¶¶ 20, 26-29.

### B. The Idea and Expression in the Source Code and Comments At-Issue Are Separable, Making the Expression Protected Under Copyright Law.

The copying was of expression, and not just ideas.  Defendants are correct to assert that copyright law does not protect pure ideas.  However, the test to determine whether copyrighted materials are pure ideas is far more strict than they argue.  "When the 'idea' and its 'expression' are thus **inseparable**, copying the 'expression' will not be barred. . . **But accepting the principle in all cases, including on these facts, would eviscerate the protection of the copyright law.**"  CDN Inc. v. Kapes, 197 F.3d 1256, 1261 (9th Cir. 1999) (citation and internal quotes omitted, emphasis added).

In CDN, the plaintiff CDN copyrighted a compilation of the names of collectors, coins and their wholesale prices.  CDN, 197 F.3d at 1257-58.  The defendant admitted copying the wholesale prices by building a webpage with showing retail prices used by modifying the wholesale prices published by CDN.  CDN, 197 F.3d at 1257-58.  The only issue on appeal was whether CDN's wholesale prices were copyrightable, not whether any copying took place.  Id. at 1260.  "In order to

---

discussion elsewhere in the Opposition regarding the relationship between these three persons.  Therefore, all the facts cited in Plaintiff's moving papers and herein are wholly undisputed.

find something not copyrightable, it must be in the "narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent. . . .Nevertheless, 'the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make this grade quite easily.'" Id. (citing Feist.) **The Ninth Circuit found that the prices (and only the prices) of the coins in the Plaintiff's copyrighted materials were sufficiently creative for copyrightability**. Id. at 1261.

Like Defendants here, the defendant in CDN also argued that the idea and expression had merged, preventing copyrightability. The court stated: "As Judge Hand noted, the difference between idea and expression is one of degree." Id. The Court found that by allowing the copyright on the prices, but not the idea of a wholesale price guide, that line was sufficiently preserved. Id.

The CDN decision shows how the software code at-issue here is more than sufficiently original for copyrightability, and the idea and expression have not merged. The over 66 pages of software source code and comments easily make the grade. Though Mr. Zavecz claims in his declaration several times that there is only one way to "do" these programs, he does not say there is only one way to **express** the programs. **YDI is not claiming that Zavecz copied a mathematical algorithm; YDI has shown that Zavecz copied the identical expression of the prior work, including the order, comments, variable names, and even spacing, line breaks, and capitalization, none of which is required by the "idea" of the algorithm**.

YDI's expert testified clearly that "[p]rogrammers have many choices of expression when writing software," that there were many ways to express the ideas underlying the software at-issue here, and that "the import library… was largely copied." Declaration of Peter Smith in Support of Plaintiff Yield Dynamics, Inc.'s Motion for Summary Judgment ("Smith Decl.") at ¶ 13, 26. These facts are undisputed and are the proper basis for a summary judgment ruling.

YDI does not, and has never, claimed a copyright on the underlying idea; YDI claims a copyright on the way that Mr. Zavecz expressed that idea in the software he sold to YDI, and then chose to copy for his new products, rather than write anew. The software easily meets the very minimal requirements of copyrightability, and the idea and expression have not merged. Therefore, this Court should grant YDI's motion for partial summary judgment that Defendants infringed its copyright.

### C. Defendants Apply the Incorrect Legal Test For Copyrightability; Regardless, Defendants Did Copy Protectable Expression.

Defendants cite the wrong test for copyright infringement in this circuit. Defendants cite to Computer Associates Int'l, Inc. v. Altai, Inc., 982 F.2d 693 (2nd Cir. 1992) for its analysis of whether the software is copyrightable. While the 9th Circuit has characterized the Altai test as "the same analysis," the articulation of the test here is different. Apple Computer v. Microsoft Corp., 35 F.3d 1435, 1445 (9th Cir. 1994). The correct articulation of infringement is under a two-part test with "extrinsic" and "intrinsic" components. Id. at 1442. Furthermore, that is a test that applies to whether there was substantially similar copying, not copyrightability, though issues of originality and expression are necessarily discussed under the two-part test. Id. ("We have traditionally determined **whether copying sufficient to constitute infringement** has taken place under a two-part test." [emphasis added]) Because Defendants have admitted to copying, this test does not apply, and the CDN test discussed above controls. Nevertheless, the proper test shows undisputed copyright infringement.

### 1. Defendants' Copying Was Virtually Identical to the Original, Making a Substantial Similarity Analysis Unnecessary.

Even assuming copying was an issue in this case, the Altai or Apple tests need not apply because Defendants' copying was verbatim or nearly identical, making the substantial similarity analysis unnecessary. The entire point of Defendants' argument in this motion is that the copying was dictated by the idea. What Defendants failed to argue, and get wrong, is that there is more than one way to express the underlying ideas, even if some of the details might have been dictated

by function (a contention YDI does not concede). Assuming Defendants are arguing that there are a very limited number of ways to express the basic idea, and assuming that argument is correct, YDI's copyright still is protected under the law. Instead of the usual broad protections afforded copyright, Defendants' argument merely leads to an argument "that only 'thin' protection, against virtually identical copying, is appropriate." Apple, 35 F.3d at 1442. <u>Here, even if there were only thin protection, the direct copying was virtually identical or verbatim, which is sufficient for a finding of copying under the second element of the copyright infringement claim</u>.

### 2. Under the Ninth Circuit's Substantial Similarity Test, the Undisputed Facts Prove that Defendants Copied Protectable Expression.

Even if the striking similarity were not enough to be direct evidence of copying, the infringing work is substantially similar to the protectable expression in the original. "Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence of: (1) the defendant's access to the copyrighted work prior to the creation of the defendant's work; and (2) substantial similarity between the copyrighted work and the defendant's work." <u>Cybermedia, Inc. v. Symantec Corp.</u>, 19 F. Supp. 2d 1070, 1077 (N.D. Cal. 1998). Defendants' access to the work is unquestionable here, as Defendant Zavecz is the author of both the copyrighted work and the infringing work. Declaration of Terrence E. Zavecz in Opposition to Motion for Summary Judgment (the "<u>Zavecz Decl.</u>") ¶ 16.

Substantial similarity is tested in the Ninth Circuit under a two-part extrinsic and intrinsic test. <u>Apple</u>, 35 F.3d at 1442. First, the plaintiff must identify the sources of the similarities. <u>Id.</u> at 1443. Second, using analytic dissection, there must be a determination of which features are protected by copyright, then unprotectable ideas must be separated from protectable expression. <u>Id.</u> Third and finally, there must be a determination of the scope of the copyright as "thin" or "broad" followed by a subjective comparison of the whole of the two products. <u>Id.</u>

#### a. Source of Similarities.

Here, the source of the similarities is the copying by Mr. Zavecz from one program he wrote and sold to Plaintiff, and a second program he later copied from that original. <u>This is not a case (like Apple v. Microsoft) where the infringing work was independently developed with the original</u>

"in mind" – this is a case of direct copying of source code. Specifically, there are eight routines where Plaintiff's expert found that Defendants copied features, structure, sequence and organization of the algorithms, not to mention the verbatim or virtually identical copying of comments and other English language elements of the programs and the source code itself. See, e.g., Smith Decl., ¶¶ 58, 72. This copying is not disputed and is at the level of typos and line breaks.

### b.    Analytic Dissection.

The primary challenge of the copying analysis between the Plaintiff's copyrighted program and Defendants' copy is that they are written in two different computer languages, namely RS/1 (also known as "RPL") for the original and Visual Basic (also known as "VB" or "Basic") for the infringing program. Smith Decl., ¶¶ 12, 31. This means there is a certain amount of reliance upon circumstantial evidence of copying for the source code itself. However, many other copyrightable expressions do not have such difficulties and are virtually identical between the two products, particularly those rooted in the English language rather than computer programming languages.

YDI's expert testified (without dispute) that "[p]rogrammers have many choices of expression when writing software," that there were many ways to express the ideas underlying the software at-issue here, and that "the import library… was largely copied." Declaration of Peter Smith in Support of Plaintiff Yield Dynamics, Inc.'s Motion for Summary Judgment ("Smith Decl.") at ¶ 13, 26.

In his discussion of importing data, Mr. Smith states:

> My experience in writing code, and my experience when reading other peoples code, is that **there are many choices that can be made when writing code that imports data**. Firstly, there is a big choice about the **overall parsing method** – there are special tools like 'yacc' and 'lex' (or their more modern counterparts 'bison' and 'flex') to read in files; these may or may not be appropriate. For some very common file formats there may be a **choice of specialized import libraries** (at my current job, we use at least two different libraries to read in the very popular 'XML' format). For other file formats there may be specialized libraries that have restrictions; in the Basic code, for example, the ImportExcelFEM code uses such a library. However, **files can be read without these special libraries**. Once the initial overall method is chosen, the code will have all the regular choices that any code will have – **how to break up the problem into smaller problems, how to name variables, what to comment, and so on.**

Smith Decl. at ¶ 19 (emphasis added). Here, Defendants copied the same choices made in copyrighted software of Plaintiff rather than independently make choices.

Throughout his analysis of Defendants' copying, YDI's expert discusses comments both as an indicia of copying and also as valuable non-functional expression resulting from choices by the programmer. Mr. Smith states that "what to comment" is one of "the regular choices that any code will have." Smith Decl. at ¶ 19. Comments are **pure expression** and "not part of the functional code; they instead act only as a guide to future programmers working with the source code." Computer Assocs. Int'l v. Quest Software, Inc., 333 F. Supp. 2d 688, 699 (N.D. Ill., 2004).

There are too many examples of protectable expression to cover them all within the page limits of this brief, but a few selected examples that show the overall pattern of copying are discussed below. Even these examples do not cover the vast array of structure, sequence, organization, variable names, variable orders, comments, and other non-functional expression that was copied.

**Copying the "file" expression where files are not used in Visual Basic**

For example, the headings Mr. Zavecz discusses in his declaration prove that: (a) there was near or verbatim copying of the expression; and (b) there is more than one way to express the idea. In paragraph 36 of the Zavecz Declaration, the two headers are identical: "Create an empty Critical Dimension (CD) **file** and Mark Table" (emphasis added). Defendants could easily have said the second time "Make a blank Critical Dimension array and Mark table" instead of the **exact same form of expression.** Indeed, as Peter Smith testified, the Visual Basic language **does not use files** – this means that the copied reference to "file" in the copied comment is completely superfluous – the "functionality" did **not** require copying because a "file" has no meaning in Visual Basic. Smith Decl. at ¶ 47. The reference to "file" in the original program was a reflection of the requirements of the RS/1 programming language, and is extremely strong circumstantial evidence of copying of protected expression. In fact, the copied CDMakeFile routine is not even used in the infringing product—**there is no function!** Smith Decl. at ¶ 50 and p. 4 of Exh. C thereto. As such, there is no possible argument that the copied language was required by a functional idea, it is pure, protectable expression.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com[sm]

Reply in Support of Motion for
Partial Summary Judgment

9

Case No. 06-C-00331 VRW

**Warning messages**

Another undisputed example is where Mr. Zavecz authored and then copied creative and expressive choices in the warning messages that the software emits. These warning messages are English sentences whose only audience is a human operator—they are not mathematics or functional code processed by the computer. (In fact, the emission of warning messages is purely a convenience for the operator, and removing the emission of warning messages would have no impact on the functional aspects of the software.) As Mr. Smith notes, the original RPL code and the copied Basic code contain a particular warning message with an identical misspelling of "independent" as "independant."

For example, there is an RPL warning message:

```
The number of independant observations in the dataset is =
'.obs
```

And there is a corresponding Basic warning message that is nearly identical including the same misspelling:

```
The number of independant observations in the dataset is <1
```

Smith Decl. at ¶ 57.

**Extra spacing**

Another example of an undisputed fact is found in the header comments to the "Array Center" functions discussed at length by YDI's expert. One of the indicia of copying Mr. Smith discusses is an identical comment in the two sets of code that reads "`Die size in mm  X`" (with two spaces between "`mm`" and "`X`"). In addition to the fact that the double-space is an indication of copying, this comment is interesting because it is a good example of non-functional expression. As Mr. Smith says, "the header comment is generally used to document input variables." Smith Decl. at ¶¶ 38-44 and Exh. D thereto.

**Surprising choices that are not functional**

The "Array Center" functions provide other examples of expression that is in no way dictated by the problem to be solved. Specifically, the functions perform an identical and superfluous rounding-off of data which, as Mr. Smith notes, is "**very surprising**… that it is done

at all [because] it would… reduce the precision of the data… **there seems to be no particular reason for it**." Smith Decl. at ¶¶ 42-44 (emphasis added).  In contrast with Defendants' claim that there is only one way to write this code, this is a clear example where Defendants made a "surprising" choice that was not dictated by idea or function.  As with the others discussed here and in the Smith Decl., Defendants did not dispute these facts.

### Duplicative and non-essential expression in CalcStatistics

Mr. Smith describes the "CalcStatistics" functions as "compelling evidence" of copying, because they contain interesting examples of non-essential and non-functional expression chosen by Defendants and not dictated by idea or function.  In both sets of code, the value of the "`rangemax`" variable (original expression in itself) is computed twice in an identical, duplicative, and "roundabout" manner (and with identical comments at identical locations).  There is no functional reason to calculate the `rangemax` value twice.  Smith Decl. at ¶¶ 63-67.  Further, the "`takes too long, not used`" comment is pure, non-functional expression reminding the programmer why one approach was **not** chosen.  Smith Decl. at ¶¶ 68-69.

### Copying of a non-useful routine

A further example of superfluous and non-functional code is the "`FixEmpty`" function calls in the "FieldCenter" functions.  Mr. Smith states that in the Basic version of the code, "**[t]he FixEmpty call will not ever do anything useful**" (emphasis added).  Smith Decl. at ¶ 74-76.  This is another example of copied non-essential, non-functional expression, and again, Defendants have not disputed these facts.

Though there are too many examples to highlight here, this sampling makes clear that there is a vast array of creative choices sufficient to find protectable expression in much of the copied work.  Not only is much of the source code and comments protectable, that expression was copied, most often in a virtually identical manner.

### c.     Subjective Comparison.

In the third and final step of the substantial similarity test, the original and the copy must be compared as a whole.  The range of possible expression in the 66 pages of source code is sufficient for a finding of "broad" protections from nearly identical copying.  Here, Plaintiff's expert has

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com℠

Reply in Support of Motion for
Partial Summary Judgment

11

Case No. 06-C-00331 VRW

found (without dispute) that the eight routines were copied by Defendants. Smith Decl., ¶¶ 27-28. The many examples provided above further show, including to a lay person, that Defendants copied those routines as a whole. Why else do they have the same typographical errors or multiple references to non-functional routines? Copying here is clear, undisputed and undeniable. See, for example, Cybermedia, 19 F.Supp.2d, at 1077 (ruling that functional restraints cannot explain line after line of copying, including common typographical errors).[3]

### 3. The Gates/Altai Test Yields the Same Result.

For the reasons discussed above, the Altai test discussed in the Opposition is not the appropriate articulation of the test for substantial similarity in the Ninth Circuit. Nevertheless, the Ninth Circuit has found that analysis, as modified by Gates Rubber Co. v. Bando Chem. Indus., 9 F.3d 823 (10th Cir. 1993), essentially the same. Apple, 35 F.3d at 1445. ("Other courts perform the same analysis, although articulated differently. ").

Because the analysis is the same under either the Apple articulation or the Gates/Altai articulation, the discussion above in section II.C.2. applies equally. Under either method of analysis, the undisputed facts prove that Defendants copied protectable expression in Plaintiff's copyrighted software.

### D. Zavecz's Declaration Is a Set of Self-Serving, Bare Assertions Unsupported by Any Independent Facts and is Insufficient to Defeat Summary Judgment.

In order to survive summary judgment, Defendants must show that there is some issue of disputed material fact. F.R. Civ. P., Rule 56(c). The primary factual basis for Defendants' opposition is the self-serving, conclusory declaration of a party, Mr. Zavecz, without any supporting factual basis. As discussed above, even assuming Mr. Zavecz told the truth, summary judgment should be granted to YDI. Nevertheless, the declaration of Mr. Zavecz is not sufficient to create an issue of material fact, making summary judgment proper in all events:

---

[3] Finally, though not raised by Defendants, it should be noted that the routines at issue here are essential to the overall program, preventing any attempt at a *de minimis/*fair use defense. "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987). It is undisputed that the routines copied are important, so much so that the overall program will not function without them. Smith Decl. at ¶ 25. There can be no *de minimis* defense.

> A party opposing summary judgment 'may not rest upon the mere allegations or denials of [the pleadings] but ... must set forth specific facts showing that there is a genuine issue for trial.' Fed. R. Civ. P. 56(e). See also Anderson v. Liberty Lobby Inc, 477 U.S. 242, 252, . . . (holding that to survive a motion for summary judgment, the 'mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.').

Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 682 (9th Cir. 2001). Mr. Zavecz's declaration is, at best, a mere scintilla of evidence, which is not sufficient to defeat a motion for summary judgment. Specifically, Mr. Zavecz's declaration fails to address most of the details of Plaintiff's moving papers. The Smith Declaration provides substantial, particularized, and expert evidence of aspects of the copied code that are not dictated by functionality or mathematical algorithms. In response, Mr. Zavecz's declaration simply states that the copying was functional or based on math without any refutation of the actual declaration of Mr. Smith. Zavecz Decl., ¶ 17. Though Mr. Zavecz claims to cite some specific parts of the code, he actually only discussed broad generalities, and in no way refutes the substantial evidence of the Smith Declaration. This conclusory declaration is not enough to defeat summary judgment under the scintilla rule. For this independent reason, Plaintiff's motion for partial summary judgment should be granted.

### E. Equitable Estoppel Bars Defendants From Claiming the Software Is Not Copyrightable Since They Originally Placed the Copyright Notices In It.

Defendants are equitably estopped from claiming that the software at issue here is not copyrightable because they put copyright notices into the source code and comments at-issue here. It is undisputed that Defendants placed copyright notices in the software and comments at-issue in this case. See, e.g., Smith Decl., Exhs. C-F. This is undisputed proof that Defendants thought the software was copyrightable. Defendants need not be experts in copyright law in order to believe that the software is copyrightable, they must simply know the fact of the notice.

Second, Defendants intended their conduct to be acted upon. In the Asset Agreement, Defendants sold their copyrights to Plaintiff. Risch Decl., Exh. E. Defendants also provided the

software with the copyright notices in it to Plaintiff. Defendants thus intended Plaintiff to act upon the conduct of placing copyright notices and copyrightability. At a minimum, they prove that Plaintiff had a right to believe Defendants intended the conduct to be acted upon.

Third, it is undisputed that Plaintiff was ignorant that Defendants would claim that the software was non-copyrightable. It was not until this dispute arose that Plaintiff learned of Defendants' position that this software is allegedly not copyrightable.

Fourth, Plaintiff has relied upon Defendants' conduct to its injury. Plaintiff purchased the software from Defendants on the belief that the software was copyrightable and Defendants' assertions, including those in the code itself, that the software was protected by the copyright laws. Risch Decl., Exh. E. Plaintiff had been harmed by the Defendants' violations of its copyright, and further by the claims of Defendants in this motion that their software is not copyrightable.

All four elements of equitable estoppel are met here; Defendants should be prevented from arguing, that the software they placed copyright notices in, is not copyrightable.

### III. PLAINTIFF HAS ONLY REQUESTED SUMMARY JUDGMENT THAT STATUTORY DAMAGES AND FEES ARE AVAILABLE; ANY ARGUMENT REGARDING A LACK OF DAMAGES BY DEFENDANTS IS NOT SUFFICIENT TO DEFEAT THIS SUMMARY JUDGMENT MOTION.

YDI filed this Motion for Partial Summary Judgment, and in that motion, it requested partial summary judgment that Defendants can be held liable for statutory damages. The amount or measure of damages is not something for which YDI sought partial summary judgment, making any argument by Defendants regarding a lack of actual damages wholly irrelevant to this motion.[4]

The issue is whether Defendants are subject to statutory damages even though Defendants infringed prior to registration, because **Defendants themselves** placed copyright notices in the software in question. In other words, Defendants are equitably estopped from claiming the

---

[4] YDI does not concede that is has no actual damages. As a matter of law, YDI is entitled to actual damages from the time period before registration. 17 U.S.C. § 504(b). Furthermore, the parties agreed during the Case Management Conference that a magistrate will try the measure of damages.

protections against statutory damages because they were the first to claim copyrightability of this software and have been on notice for the entire relevant time period. Indeed, it was **Defendants** who failed to register the copyright prior its sale to YDI.

Defendants cannot, and did not, deny that they inserted copyright notices into this software, and have been on notice that the software and source at-issue here is subject to the protections of the copyright laws. Therefore, they should be estopped from claiming the protections of 17 U.S.C. § 412, which was designed to protect an unknowing public—not a knowing author.

## CONCLUSION

Defendants have admitted to copying the source code and comment to which YDI has a valid copyright. There can be no doubt that this software is subject to the protections of the copyright law. Therefore, Defendants have infringed YDI's copyright and partial summary judgment should be granted.

Respectfully submitted,

RUSSO & HALE LLP

Dated: October 5, 2006

By:   /s/ Michael Risch
       Michael Risch
       Attorneys for Plaintiff
       YIELD DYNAMICS, INC.