IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
YIELD DYNAMICS, INC,                    No   C 06-0331 VRW

          Plaintiff,                         ORDER

          v

TEA SYSTEMS CORPORATION; TERRENCE
E ZAVECZ; DONNA ZAVECZ,

          Defendants.
_____/
```

      Yield Dynamics, Inc, ("YDI") seeks partial summary judgment that defendants committed copyright infringement. Doc #25. YDI argues that summary judgment is appropriate because the undisputed factual record supports finding copyright infringement as a matter of law and defendants are collaterally estopped from denying infringement. Id. For reasons discussed below, YDI's motion for partial summary judgment is GRANTED.

I

This case involves copyrighted software source code written by defendant Terrence Zavecz. Doc #25 at 3. TEA Systems Corporation, owned by Zavecz and his wife, and Sub-Lambda Systems, Inc, owned by Zavecz and other shareholders, are also defendants. (Defendant Sub-Lambda Systems, however, settled with YDI and is no longer a party. Doc #13.) Defendants developed software products entitled Weir PSFM, Weir PW, Weir DM, Weir DMA, LithoWorks PW and LithoWorks PEB ("TEA products"). Doc #25 at 3. YDI alleges that defendants copied portions of the source code from the programs MAPA, OASnt, and FPAex ("YDI products") when creating TEA products. Id.

Zavecz formed TEA with his wife in 1988, using the corporation to develop the YDI products. Doc #41 at 2. Defendants sold the YDI products to YDI on May 21, 1999, at which time Zavecz became an employee of YDI. Doc #25 at 3. Zavecz continued to work at YDI until he was terminated on January 25, 2001. Doc #41 at 2. YDI did not obtain copyright registration for the YDI products until March 4, 2005. Doc #25 at 4.

YDI became aware of the TEA products in 2003, but the parties have been involved in prior litigation since 2001. Id at 3. YDI first sued Zavecz for breach of contract in 2001, subsequently asserting a copyright infringement claim in related arbitration proceedings. Doc #41 at 1. Most recently, YDI filed suit for trade secret misappropriation in California state court. Id. No court, however, has determined whether defendants copied source code copyrighted by YDI. Doc #25 at 4.

YDI hired an expert witness, Peter Smith, to analyze TEA products' and YDI products' source code in February of 2005. Doc #25 at 3-4; Doc #41 at 4. The YDI products' source code is written in RPL programming language. The TEA products' source code is written in an extension of the Basic programming language called Visual Basic. Doc #27 at 1 (Smith decl). Smith compared the source code of the earlier YDI products with the source code of the TEA products and concluded that portions of the YDI products' RPL source code were copied into the TEA products' Visual Basic source code. Id at 9. More specifically, Smith concluded that YDI's RPL code had been copied and translated into TEA's Basic code. Id ("[T]his does not mean that every line from every function was copied; in a translation one would not expect to see this.")

Smith compared the products' source code "look[ing] for small parts of the RPL [YDI products'] code that could be possibly matched to Basic [TEA products'] code. Searches were done on individual words and phrases in the comments that might have been copied, seemingly unusual variable names, and, of course, the function name itself. * * * Each time a possible match was found, the RPL [YDI] and Basic [TEA] code was compared side-by-side to determine if the code was similar. Code was deemed to be similar if it had comments that were identical in parts, or had significant structural similarities." Id at 9-10. The comparison determined that, while the function codes were not identical, the similarity suggested that nine functions were "clearly copied" from YDI products' source code to TEA products' source code. Id at 11-12. Additionally, one of the functions Smith concludes was clearly

3

copied, CDMakeFile, is not used in the TEA products' source code. Id at 13 and Ex C.

The evidence that these functions were copied is extensive and includes similar content and style of comments, typos or extra spaces in both codes, use of RPL terminology in the newer Basic code, code lines similar to RPL code that are not used and marked "old" or "takes too long, not used" and evidence that specific terms were replaced using a search and replace technique. Doc #27 at 11-24.

Defendants argue that the similarities noted by Mr Smith can be explained by functional constraints and common authorship. Doc ##41, 43. Defendants argue that all but one of the copied functions are unprotected mathematical formulae and that the remaining function is an unprotected standard table. Doc #41 at 11-12. Defendants also allude to the fact that Zavecz created programs prior to the YDI products while working for KLA Instruments and that Zavecz copied code from products created prior to the YDI products. Id at 2.

Defendants also question Smith's expertise and conclusions, providing testimony from previous litigation in which Smith was cross-examined. Doc #41 at 4-8 (citing Docs #45-48 Ex D and Ex E). Defendants argue that because Smith was unfamiliar with the products analyzed, he "could not testify whether Zavecz simply translated some code snippets that he had used repeatedly over the years as opposed to translating the source code from three identified products." Id at 6. Defendants also argue that Smith is unable to determine if the lines that show evidence of copying

represent any meaningful portion of the source code in the TEA products. Id at 6-7.

Seven of the nine functions allegedly copied were located within the import library portion of the TEA products' source code. Doc #27 at 11. Smith found that 79% of the lines of code in the import library "are either in functions that have been copied or are in functions that directly use copied functions." Id. This includes direct copying of approximately eight procedures (comprising 66 pages of source code), as well as the use of those procedures in other functions used by every single Weir and LithoWorks produce. Id at 11-13. Smith could not provide a quantitative value for the amount of code copied "because many lines of code fall into an in-between category where the line might have been copied, but where the indications of copying are slight." Id at 10-11, 13.

II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the nonmoving party. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v Liberty Lobby</u>, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. The burden of establishing the absence of a genuine issue of material fact

5

lies with the moving party.  <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.  FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting the claim that a genuine issue of material fact exists.  <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  <u>Thornhill Publishing Co, Inc v GTE Corp</u>, 594 F2d 730, 738 (9th Cir 1979).  The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson</u>, 477 US at 255.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id at 249.

### III

YDI seeks summary judgment finding that defendants have infringed YDI's copyrights as a matter of law, reserving the issue of damages for further litigation.

To prevail on its claim of copyright infringement, YDI must ultimately prove both ownership of a valid copyright and copying of protected expression by defendants.  Copying may be inferred from (1) access to the copyrighted work by defendants and

1  (2) substantial similarity of both ideas and expression between the
2  copyrighted work and the allegedly infringing work.  <u>Data East USA,</u>
3  <u>Inc v Epyx, Inc</u>, 862 F2d 204, 206 (9th Cir 1988).

4       As articulated in <u>Apple Computer, Inc v Microsoft Corp</u>,
5  35 F3d 1435 (9th Cir 1994), the Ninth Circuit employs a two-part
6  analysis for determining substantial similarity: extrinsic and
7  intrinsic tests.  The extrinsic test is an objective one to
8  determine whether there is substantial similarity in the ideas; it
9  depends upon specific criteria which can be listed and analyzed.
10 Analytic dissection is appropriate.  <u>Sid & Marty Krofft Television</u>
11 <u>Productions, Inc v McDonald's Corp</u>, 562 F2d 1157, 1164 (9th Cir
12 1977); <u>Shaw v Lindheim</u>, 919 F2d 1353, 1357 (9th Cir 1990).  The
13 intrinsic test is a subjective one to determine whether there is
14 substantial similarity in expression; it depends on the response of
15 the ordinary reasonable person.  <u>Krofft</u>, 562 F2d at 1164.
16 Infringement can only be found if each of the two parts is
17 satisfied.  Id; <u>Olson v National Broadcasting Co, Inc</u>, 855 F2d
18 1446, 1449 (9th Cir 1988); <u>Frybarger v International Business</u>
19 <u>Machines Corp</u>, 812 F2d 525, 529 (9th Cir 1987).

20      In the present case, the parties do not dispute YDI's
21 ownership of valid copyrights, and defendants clearly had access to
22 YDI's copyrighted works.  The only remaining issue is whether
23 defendants' works are substantially similar in both ideas and
24 expression to warrant a finding of infringement.
25
26 \\
27 \\
28 \\

7

**A**

The Ninth Circuit has held that the extrinsic analysis should be performed by the court as the initial inquiry in determining whether illicit copying took place because the inquiry will define the scope of copyright protection before considering the work as a whole. Apple at 1443 (citations omitted). The Ninth Circuit has also set forth a three step analysis to guide courts in the discussion of the extrinsic component of the test*:*

> (1) The plaintiff must identify the source(s) of the alleged similarity between his work and the defendant's work.
>
> (2) Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright.
>
> (3) Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright – that is, decide whether the work is entitled to "broad" or "thin" protection. Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

Id. The court will apply each of these steps to determine the appropriate scope of protection for YDI products' source code.

**1**

YDI has provided the source of the alleged similarity between the source codes through Smith's conclusions. Smith has identified nine functions that have evidence of similarities

\\

1 suggesting they have been copied and translated from YDI product's
2 RPL source code into TEA products' Basic source code.  Doc #27.

**2**

Copyright law protects only the expression of an idea, not the underlying idea itself.  <u>CDN, Inc v Kapes</u>, 197 F3d 1256, 1261 (9th Cir 1999).  The merger doctrine prohibits copyright holders from protecting expressions that are essential to conveying an idea.  Id.  "When the 'idea' and its 'expression' are thus inseparable, copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law."  <u>Herbert Rosenthal Jewelry Corp v Kalpakian</u>, 446 F2d 738, 742 (9th Cir 1971).

Defendants argue that the programs are not "substantially similar" for copyright purposes because any similarity that does exist between the programs relates exclusively to unprotectible material.  For its part, YDI contends there is sufficient similarity between the protectible elements of the program to justify a summary judgment of infringement.

There is no dispute that source code can be protected under copyright law.  <u>Apple Computer v Franklin Coputer Corp</u>, 714 F2d 1240, 1249 (3d Cir 1983).  To the extent that source code consists of mathematical formulae or other functional expressions, however, the idea expressed by the source code cannot be protected under copyright law.  <u>Apple v Microsoft</u>, 35 F3d at 1443 (preventing copyright holder from obtaining "patent-like protection" for an idea).

Defendants assert that plaintiff is claiming exclusive ownership over mathematical processes that are excluded from copyright protection. Doc #41 at 8. Defendants misstate the basis of YDI's claim. YDI's claim is not based upon infringement of an idea but upon infringement of the expression of idea, specifically, the unique selection and arrangement of features set forth in the YDI RPL code. Doc #51 at 6.

Under the compilation doctrine, even if the constituent elements of a work are not protected, protection may extend to the "selection, coordination, or arrangement" of such elements in the work as a whole. Feist Publications, Inc v Rural Telephone Service Co, Inc, 499 US 340, 357 (1991)  The constitutional requirement of originality precludes copyright protection for facts. Id at 344-45. Nonetheless, if unprotectible facts are selected, coordinated and arranged in a manner that demonstrates a minimal degree of creativity, the author may claim protection in that selection and arrangement. Id at 348. See also Apple v Microsoft, 799 F Supp 1006, 1023 (ND Cal 1992) (noting protectability of screen display's unprotectible constituent elements). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." Feist at 345.

Defendants argue that eight of the nine functions largely contain mathematical formulae that involve no creative expression, Doc #42 at 11; Doc #43 at 5 (Zavecz decl). The court disagrees. YDI has shown that defendants copied the identical expression of the YDI RPL code, including the order, comments, variable names, and even spacing, line breaks and capitalization, none of which is

required by the "idea" of the algorithm.  Doc #27.  Defendants do not dispute this.  Defendants do not dispute that there are many ways to express the ideas underlying the software at issue here.  In fact, Zavecz notes that he "completely rewrote the coding on the 8 segments that YDI cites as objectionable" in less than 24 hours programming time.  Doc #43 at ¶18.  This shows that YDI products' source code does not represent the sole expression of the contained mathematical formulae and functional ideas.

In addition, Smith identifies almost verbatim copying of the YDI RPL code comments, English-like text that describes the internal details of the program.  Doc #27 ¶¶ 10-11, 35, 39-41, 46-48.  Defendants do not dispute the copying and do not dispute that comment is protected expression.  Comments are pure expression and "not part of the functional code; they instead act only as a guide to future programmers working with the source code."  <u>Computer Associates Intern v Quest Software, Inc</u>, 333 F Supp 2d 688, 699 (ND Ill 2004).

Defendants do not dispute instances of copying code and then "commenting it out" with words such as "old" or "not used-too slow."  Doc #27 at ¶¶ 52-54.  Nor do they dispute copying of YDI RPL code that is nonsensical or inefficient in the Basic code.  Doc #27 at 14, 17, 21-22, 23-24.

Defendants' argument that the similarities noted by Mr Smith can be explained by common authorship and functional constraints is unpersuasive.  Defendants do not dispute that the hundreds of code lines identified by Mr Smith could have been written differently, even as constrained by functional necessity and the use of common programming tools.  As stated in <u>CyberMedia, Inc v</u>

11

1  **Symantec Corp, 19 F Supp 2d 1070, 1077 (ND Cal 1998), "Common
2  authorship alone does not explain why line upon line of the two
3  codes are identical or nearly identical, even to the extent of
4  containing a common typographical error." Mr Zavecz's declaration
5  discusses the code in broad generalities and does not refute Mr
6  Smith's declaration. Mr Zavecz simply states that the copying was
7  functional or based on math. Doc #43 ¶17. This conclusory
8  declaration fails to "set forth specific facts showing that there is
9  a genuine issue for trial." FRCP 56(e).**

### 3

11  **Protection of compilations is thin, as it is limited to
12  just "those components of a work that are original to the author,"
13  Feist, 499 US at 348.**

> Although the manner in which facts are expressed is
> protected by copyright, the extent of protection may be
> narrowed by other limiting doctrines. The primary
> objective of copyright is to promote the Progress of
> Science and useful Arts. To this end, copyright assures
> authors the right to their original expression, but
> encourages others to build freely upon the ideas and
> information conveyed by a work. This principle is known as
> the idea/expression dichotomy and applies to all works of
> authorship. The scope of protection or the degree of
> substantial similarity required to show infringement will
> vary according to the type of work and the ideas expressed
> in it.  The idea/expression dichotomy serves to severely
> limit the scope of protection in fact-based works. Some
> ideas can be expressed in myriad ways, while others allow
> only a narrow range of expression.* * * When an idea or an
> expression are indistinguishable, or 'merged,' that
> expression will only be protected against nearly identical
> copying.

**Meridian Project Systems, Inc v Hardin Const Co, LLC, 426 F Supp 2d
1101, 1111-13 (ED Cal 2006) (internal quotes and citations omitted).**

At issue here is the protection afforded to the text in YDI's RPL source code. Such text is entitled to at least some protection as compilations. See Harper House, Inc v Thomas Nelson, Inc, 889 F2d 197, 205 (9th Cir 1989). However, because the expression set forth in the source code text is intertwined with the ideas conveyed through the text, to give YDI broad copyright protection over the text would be to confer a monopoly of the ideas expressed in the text upon the copyright owner, in violation of 17 USC § 102(b). Shaw v Lindheim, 919 F2d 1353, 1360 (9th Cir 1990). In this context, "similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." Landsberg v Scrabble Crossword Game Players, Inc, 736 F2d 485, 488 (9th Cir 1984); see Apple Computer, 35 F3d at 1439 ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.") Accordingly, because it is entitled to only "thin" protection, to demonstrate infringement, plaintiff must produce evidence that defendants' works are virtually identical to YDI's works.

Even if, as YDI argues, the YDI products' code describes unique ways to express the software, Doc #51 at 6, the YDI RPL code nonetheless describes facts and ideas, which YDI's copyright cannot protect. Only the expression of these facts is protected, and for the reasons set forth above, such expression is entitled to only thin copyright protection.

\\
\\
\\

**B**

Once the scope of the copyright is determined, unprotectible ideas must be separated from potentially protectible expression; to that expression, the court must then apply the relevant limiting doctrines in the context of the particular medium involved, through the eyes of the ordinary consumer of that product. Apple, 35 F3d at 1443.

In order to prevail on its claim of copyright infringement arising out of defendants' alleged copying of RPL source code, YDI must show that defendants' Basic code is virtually identical in both ideas and expression to the YDI RPL code. The intrinsic analysis requires the court to evaluate the similarity of expression from the standpoint of the ordinary reasonable observer. Apple Computer, 35 F3d at 1442. This is a subjective analysis, conducted without expert assistance. Id. Summary judgment for plaintiff in this case can only be granted if no reasonable trier of fact could find that the allegedly infringing works were not virtually identical to the RPL source code text.

As described above, plaintiff has identified many examples of "virtual identity" between the two programs, including identical content and style of comments, common variable and function names, common flow of control and formatting conventions, common styles of line length, common unusual design decisions, typos or extra spaces in both codes and use of RPL terminology in the newer Basic code. Doc #25 at 9. Smith has identified 1660 lines (or about 66 pages) in the TEA Basic code that show evidence of copying, including verbatim copying. Doc #27. This copying is not disputed.

Defendants' only argument is that the copying was of unprotected mathematical algorithms. As discussed above, the copied source code can be expressed in more than one way, and this defense has been rejected. See also Cybermedia, 19 F Supp 2d at 1077 (ruling that functional constraints cannot explain line after line of copying, including common typographical errors).

For differences that do exist in the lines identified as copied, Mr Smith offers explanation. Specifically, where code is translated from one language to another, "copying cannot be a direct letter-for-letter copy." Doc #27 ¶12. Several indications are preserved when code is translated (id at ¶13), but some indicators have to be removed. Id at ¶14. While the intrinsic analysis is to be conducted without expert assistance, the court must note that defendants do not refute Mr Smith's analysis. Accordingly, there is no reason to have trial on this issue, particularly where significant evidence of verbatim copying, ascertainable through the eyes of an ordinary consumer, already exists.

Defendants argue that the portion of the TEA Basic text that may have been copied is insubstantial in light of the work as a whole. Doc #43 at 7, 12. However, the Supreme Court has held that in analyzing the portion of the copyrighted work, courts should evaluate "the qualitative nature of the taking." Harper & Row, Publishers, Inc v Nation Enterprises, 471 US 539, 564-65 (1985), see also Baxter v MCA, Inc, 812 F2d 421, 425 (9th Cir 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.")

It is undisputed that the code lines identified by Mr Smith comprise a relatively small percentage of the TEA Basic program as a whole. There is substantial evidence, however, that the routines in which these code lines appear are essential to the functioning of the Basic program. Mr Smith states that the import routine, the biggest program code file in the TEA Basic system and the one with the most extensive copying, goes to the core of the product in that "import functions are critical for virtually every software system." Doc #27 ¶25. Defendants do not dispute this. Therefore, it cannot be said that the identical code is so insignificant as to be *de minimis.*

Based upon its comparison between the YDI RPL code and TEA Basic code, and based on Mr Smith's undisputed testimony, the court concludes that no reasonable juror could find that the TEA products' code was not copied verbatim from the YDI products' code, and thus, a reasonable juror must find that the programs are virtually identical.

V

YDI also argues that defendants are estopped from contesting infringement because of a settlement agreement reached with Sub-Lambda Systems, Inc. Doc #25 at 6. Because the court grants summary judgment on a finding that there are no material disputes as to copying, the court need not address this argument.

\\

\\

**16**

# VI

In addition to moving for summary judgment on copyright infringement, YDI seeks summary judgment that statutory damages are available. Doc #25 at 17. YDI argues that defendants should be equitably estopped from limiting damages pursuant to 17 USC § 412 because they placed copyright notices in the YDI products' source code prior to selling the code to YDI. Id.

According to § 412, statutory damages and attorneys fees are not available for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." YDI did not obtain copyright registration for the YDI products source code until March 4, 2005, almost six years after purchasing YDI products and two years after the first act of alleged infringement. Doc #25 at 2-3.

The doctrine of equitable estoppel prevents a party from asserting a defense otherwise available when the following elements are present:

> (1) an admission, statement or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party from allowing the first party to contradict or repudiate such an admission or act.

Feature Realty, Inc v City of Spokane, 331 F3d 1082, 1091 n7 (9th Cir 2003).

Equitable estoppel is inappropriate here because § 412 limits damages based on the conduct of the plaintiff, not defendants. YDI faces limited statutory damages due to its own

17

failure to register the copyright, regardless of whether defendants placed copyright notices in the YDI products' source code. There is nothing inconsistent with defendants' prior placement of copyright notices within the source code and their current argument that plaintiff failed to register the copyright within three months of the first publication of the work. Accordingly, defendants are free to limit statutory damages and attorney fees pursuant to § 412.

## VII

For reasons discussed above, plaintiff's motion for partial summary judgment is GRANTED. The trial on liability, set for May 7, 2007, is vacated. The parties are still ordered to appear on March 20, 2007 at 9:00 am for a case management conference. The parties are to meet and confer and report to the court in advance of the conference on the issue of how best to determine plaintiff's damages, including whether the parties request time to try to stipulate to a damage amount and whether the parties can agree to submit the case to a magistrate judge for a hearing and final determination on damages.

SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge